**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Amanda McBroom,

          Plaintiff,

v.

Ethicon, Inc.; and Johnson & Johnson,

          Defendants.

No. CV-20-02127-PHX-DGC

**ORDER**

On September 13 and 14, 2021, the Court held a jury trial on the question of whether Plaintiff's personal injury claims are barred by Arizona's two-year statute of limitations. The jury found in favor of Plaintiff, and Defendant moved to set aside the jury's verdict under Federal Rule of Civil Procedure 50.  The parties have now briefed this question. Docs. 150, 155.

A court should render judgment as a matter of law under Rule 50 when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a).  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).  As a result, in ruling on this motion, the court must draw all reasonable inferences in favor of Plaintiff.  *Id.*

Defendants argue that the statute of limitations began to run before March 13, 2013 (the date two years before Plaintiff filed suit) when Plaintiff knew she was suffering pain

and complications from Defendants' pelvic mesh, which had been implanted in her body in 2007.  The fact that the mesh was clearly causing her difficulties was enough, Defendants contend, to trigger her duty to investigate and the running of the limitations period.  Plaintiff did not have to be told that the mesh might be defective: "In 2012, a reasonable person in Ms. McBroom's position should have known she was injured (the 'what') by Defendant's pelvic mesh products (the 'who') and been on notice to investigate her claim." Doc. 150 at 1.

Plaintiff responds – and testified at trial – that although she knew in 2012 that she was suffering complications from the mesh, she thought these were normal complications of mesh implants.  She had no reason to think the mesh was defective.

The Arizona Supreme Court's decision in *Walk v. Ring*, 44 P.3d 990 (2002), controls this issue.  The plaintiff in *Walk* sued her dentist for malpractice related to his unsuccessful efforts to reconstruct her jaw.  Like Defendants in this case, the dentist in *Walk* claimed that the plaintiff's suit was untimely because she filed it more than two years after she knew his dental work was causing her pain and discomfort.  In fact, a second dentist to whom the plaintiff had been referred had concluded that the first dentist committed malpractice, but he did not share this conclusion with the plaintiff.  Like Plaintiff in this case, the plaintiff in *Walk* argued that although she knew the first dentist's work was the cause of her pain, she did not know it was due to his fault.  She thought it was a normal complication of the dental work.  As the Arizona Supreme Court explained: "Plaintiff was not told of [the second dentist's conclusion] and claims she continued to believe that while the . . . problems she was experiencing presumably were the result of Defendant's reconstruction work, the condition was simply an untoward result not attributable to any fault of Defendant."  *Id*. at 990.

*Walk* posed essentially the same issue raised by Defendants' Rule 50 motion:

> Defendant argues that our law is clear that a plaintiff, armed with the fact that he has been injured and the identity of the person whose care inflicted the injury, has an obligation to exercise reasonable diligence in pursuing a

claim. Thus, concludes Defendant, Plaintiff did not investigate with reasonable diligence and her claim is barred.

*Id*. at 994 (quotation marks and citation omitted).

The Arizona Supreme Court squarely rejected this argument:

No doubt Plaintiff did have an opportunity to discover Defendant's negligence, but the core question is whether a reasonable person would have been on notice to investigate. Plaintiff's doctor assured her he had done nothing wrong, and we do not believe that as a matter of law she was on notice to commence investigating whether negligence was involved. This is especially true when the doctors to whom Defendant later referred Plaintiff for treatment failed to disclose to her their belief that Defendant had been negligent. While her failure to question the consulting doctors for such information could be taken as a lack of diligence, we do not believe it can be said as a matter of law that a reasonable person in this circumstance can be required to undertake such questioning or be held accountable for not doing so. This is the very sort of factual determination that must be left for the jury.

*Id*. at 996 (footnote omitted; emphasis in original). Thus, under Arizona law, "to trigger the statute of limitations, something more is required than the mere knowledge that one has suffered an adverse result while under the care of a professional fiduciary." *Id*. at 997.

The plaintiff in *Walk* sued a medical professional who had provided her treatment, but the Court does not view this as a significantly distinguishing fact. In *Walk* and this case, the plaintiff was injured by a medical procedure and yet did not suspect the defendant was at fault, believing instead that the injuries were simply untoward complications to the medical procedure. The rationale of the Arizona Supreme Court applies fully to the facts of this case:

[W]e refuse to adopt the bright-line "what and who" rule advanced by Defendant. At the very least, we interpret the "what" broadly enough to require the knowledge that would put a reasonable patient or client on notice to investigate whether the injury may be attributable *to negligence of a professional or fiduciary*. Given the facts of the present case, one cannot say as a matter of law that Plaintiff slept on her rights or was dilatory in failing to investigate or file. The issue of discovery and consequent accrual is for the jury.

*Id*. at 998.

The Court adopted the *Walk* standard in the jury instructions used in this case:

Claims accrue when a reasonable person would have been on notice to investigate *whether her injuries were caused by the fault of another*. Thus, it is not enough that a plaintiff knows she has an injury; there must also be reason to connect the injury to a particular person or entity *in such a way that a reasonable person would be on notice to investigate whether the injury might have resulted from the person's or entity's fault*.

Doc. 134 at 9 (emphasis added). Notably, Defendants agreed with the wording of this jury instruction.

Plaintiff testified at trial that she did not suspect Defendants were at fault in 2012 because she thought her suffering was simply a complication of mesh products and was consistent with the risks Dr. Crawford had described to her before he implanted the mesh. The doctors she saw in 2012 did not tell her that the mesh was defective. It was not until she saw Dr. Stratford in 2014 that she first heard the mesh may be defective.

This evidence, which is very similar to the facts in *Walk*, is sufficient to support the jury's verdict in Plaintiff's favor. Defendants suggest that no reasonable jury could have believed that Plaintiff was unaware of Defendants' possible negligence, but credibility decisions are for the jury, not the Court, and the Court must draw all reasonable inferences in Plaintiff's favor. Doing so, the Court concludes that Defendants are not entitled to judgment under Rule 50.

**IT IS ORDERED** that Defendants' Rule 50 motion, made during trial and renewed after the jury's verdict (Doc. 150), is again **denied**.

Dated this 15th day of November, 2021.

David G. Campbell
Senior United States District Judge