**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda McBroom,<br><br>    Plaintiff,<br><br>v.<br><br>Ethicon, Inc.; and Johnson & Johnson,<br><br>    Defendants. | No. CV-20-2127-PHX-DGC<br><br>**ORDER** |

This order addresses the proper application of Rule 16(e) of the Federal Rules of Civil Procedure. The rule concerns an important tool for managing civil cases – the final pretrial order – and states that "[t]he court may modify" such an order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The Court understands this to be the highest standard in the Federal Rules of Civil Procedure.

The reason for this high standard is evident. Final pretrial orders establish the template for trial, eliminating surprise and ensuring that each side is prepared to address all issues and evidence that will arise before the jury. Final pretrial orders are created after the parties have had ample opportunity for discovery and motion practice, when they are well equipped to identify the issues and evidence that will be presented to the jury. The high standard in Rule 16(e) ensures that changes to such orders are rare, helping to achieve the goal of well-prepared and predictable trials. The Court is concerned, however, that the current Ninth Circuit test for applying Rule 16(e) is off the mark in ways that could undermine the purpose of Rule 16 generally and final pretrial orders in particular.

### A. This Case and Current Ninth Circuit Law on Rule 16(e).

During the recently-completed trial in this case, Plaintiff sought to amend the final pretrial order to add exhibits she had not listed in the order. Before trial, the Court had required the parties to prepare a draft final pretrial order identifying all issues to be tried and listing all witnesses, exhibits, and objections the parties would present. Doc. 145 at 2. Consistent with the language of Rule 16(e), the Court cautioned the parties that it would not allow them "to offer any exhibit, witness, or other evidence that was not . . . listed in the Proposed Final Pretrial Order, except to prevent manifest injustice." *Id*.

The Court held a final pretrial conference nine days before trial. The Court reviewed the proposed final pretrial order with the parties, adopted the order, and noted again that the order would be the blueprint for trial and could be amended "only to prevent manifest injustice." Fed. R. Civ. P. 16(e); *see* Doc. 274.

When Plaintiff moved to amend the final pretrial order during trial, Defendants cited the current four-factor test used by the Ninth Circuit for evaluating motions to amend under Rule 16(e). *See* Doc. 311 at 1-2. The case cited was *Galdamez v. Potter*, 415 F.3d 1015 (9th Cir. 2005), in which the plaintiff sought to amend a final pretrial order to add a new claim. The court of appeals set forth the relevant test:

> In evaluating a motion to amend the pretrial order, a district court should consider four factors: (1) the degree of prejudice or surprise to the defendants if the order is modified; (2) the ability of the defendants to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the party seeking modification.

*Id.* at 1020. Other Ninth Circuit cases quote the same test. *See Hunt v. Cty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012).

By focusing first and primarily on prejudice to party *opposing* amendment of the final pretrial order – the defendants in *Galdamez* – the Ninth Circuit misapplied the "manifest injustice" test in Rule 16(e). The rule states that a final pretrial order may be amended "only to prevent manifest injustice," but manifest injustice to whom? By instructing courts to amend orders only to "prevent" manifest injustice, the rule clearly is

speaking of injustice to the party *seeking* the amendment. That is the party asking to change the trial template to avoid manifest injustice. The Rule 16(e) inquiry, therefore, should focus on the party seeking the amendment.

The language in *Galdamez* looks in the opposite direction, focusing primarily on prejudice to the party opposing the amendment. Although a manifest injustice inquiry surely is broad enough to consider prejudice to the opposing party, that prejudice should not be the initial focus. The Court holds this view for several reasons.

First, as already noted, the language of the rule directs a court to ask whether the moving party will suffer manifest injustice if the order is not amended. If such injustice is real and can be prevented only by amendment of the order, Rule 16(e) is satisfied. Examples of such manifest injustice can be imagined: A critical witness unexpectedly becomes unavailable for trial, leaving the moving party unable to prove part of his or her claim or defense. Or an unexpected development at trial will result in manifest injustice to the moving party unless an exhibit not listed in the final pretrial order is admitted. The Rule 16(e) inquiry should start with a focus on the party seeking the amendment – the party claiming manifest injustice.

Second, the high threshold in Rule 16(e) and its focus on the moving party helps accomplish a primary purpose of Rule 16. The rule was substantially revised in 1983 to improve trials "by sharpening the preparation and presentation of cases, tending to eliminate trial surprise[.]" Fed. R. Civ. P. 16, Advisory Comm. Notes (1983 Am.). The broad case-management powers conferred by Rule 16 enable trial judges to narrow issues and assist the parties in completing discovery. The final pretrial conference then is used "to formulate a trial plan, including a plan to facilitate the admission of evidence." Fed. R. Civ. P. 16(e). Rule 16 orders as a general matter "should not be changed lightly," but "[i]n the case of the final pretrial order, a more stringent standard is called for [by] the words 'to prevent manifest injustice.'" Fed. R. Civ. P. 16(e), Advisory Comm. Notes (1983 Am.).

Focusing on the party seeking to amend a final pretrial order leads to questions that reenforce the intent of Rule 16. These include whether the party seeking the amendment

was diligent in preparing for trial as Rule 16 contemplates, whether the moving party reasonably could have anticipated the need for the witness or exhibit the party now seeks to add, and whether the claimed injustice can be avoided without amending the order and changing the carefully-structured trial plan. These inquiries help answer the question of whether the final pretrial order must be amended "to prevent manifest injustice." They also reflect the responsibility Rule 16 places on parties to prepare diligently for trial. As the Ninth Circuit has observed:

> Unless pretrial orders are honored and enforced, the objectives of the pretrial conference to simplify issues and avoid unnecessary proof by obtaining admissions of fact will be jeopardized if not entirely nullified. Accordingly, a party need offer no proof at trial as to matters agreed to in the order, nor may a party offer evidence or advance theories at the trial which are not included in the order or which contradict its terms. Disregard of these principles would bring back the days of trial by ambush and discourage timely preparation by the parties for trial.

*United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) (footnotes omitted).

What is more, placing meaningful trial-preparation responsibilities on litigants is not unfair:

> By the time the court enters the final pretrial order, the parties should have fully informed views about their respective cases. Accordingly, there should be few occasions where the final pretrial order needs to be amended. Moreover, the value of the final pretrial order would be lost if judges did not hold the lawyers to them thereafter. Rule 16(e) memorializes these concerns by providing that the final pretrial order may be modified "only to prevent manifest injustice."

1 S. Gensler & L. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 16 at 502 (2021) (footnotes omitted).

A test like *Galdamez*'s, which focuses primarily on whether amendment of the final pretrial order will prejudice the party opposing the amendment, does not prompt the inquiries identified above. It asks only whether the opposing party will be hurt by the amendment. It does not reenforce the responsibility of the moving party to have prepared

- 4 -

its case for trial, implying instead that a lack of diligence by that party will be excused if the proposed amendment does not unduly prejudice the opponent. It undermines the intent of Rule 16.

Third, *Galdamez* actually misstates earlier Ninth Circuit law that is more consistent with Rule 16(e). *Galdamez* cited *Byrd v. Guess*, 137 F.3d 1126, 1132 (9th Cir. 1998), which used the same language as *Galdamez*, but *Byrd* cited *First National Bank*, which articulated a different test for the Rule 16(e) inquiry:

> (1) the degree of prejudice to the [moving party] resulting from a failure to modify; (2) the degree of prejudice to [non-moving party] from a modification; (3) the impact of a modification at that stage of the litigation on the orderly and efficient conduct of the case; and (4) the degree of willfulness, bad faith or inexcusable neglect on the part of the [moving party].

652 F.2d at 887. The first factor in this test focuses on prejudice to the party seeking to amend the final pretrial order, not on prejudice to the party opposing the amendment. The Ninth Circuit provided no explanation in *Galdamez* or *Byrd* for changing this important element of the Rule 16(e) test.[1]

Fourth, other Rule 16 standards adopted by the Ninth Circuit correctly focus on the responsibility of parties to act diligently in complying with the rule. For example, in a ruling that is enormously helpful to trial judges in managing civil cases, the Ninth Circuit has held that Rule 16(b)(4)'s "good cause" standard for amending a Rule 16 scheduling order is satisfied only where the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citing Fed. R. Civ. P. 16, Advisory Comm. Notes (1983 Am.)). The focus is on the actions of the party seeking to change the litigation schedule, not on possible prejudice to the opposing party. The Ninth Circuit further explained that "[a]lthough the

---

[1] Additionally, the fourth factor in *First National Bank* includes "inexcusable neglect," not just willfulness and bad faith as do *Galdamez* and *Byrd*. As discussed below, the diligence of the moving party is an important consideration in assessing manifest injustice. A lack of diligence is captured by the phrase "inexcusable neglect."

existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citation omitted).

This focus makes eminent sense if Rule 16 scheduling orders are to have meaning. Parties recognize that they must diligently comply with scheduling orders and will be permitted to amend only if tasks cannot reasonably be completed within the allotted time. Parties should have similar incentives for creating final pretrial orders. They should recognize that they must diligently prepare for trial and identify all exhibits and witnesses needed for their case. They will do so if they know that amendment of the order will not lightly be permitted – that amendment will be allowed only if they encounter manifest injustice. A court's initial focus when considering amendment of a final pretrial order should, like the Rule 16(b)(4) inquiry, be on the party seeking the amendment.

Fifth, some cases in this Circuit do consider the moving party's diligence or lack thereof when applying Rule 16(e). *See Colvin v. U.S. for Use & Benefit of Magini Leasing & Contracting*, 549 F.2d 1338, 1340-41 (9th Cir. 1977) ("Judge Boldt acted within the scope of his authority when he excluded Colvin's evidence at trial. Unless modified to 'prevent manifest injustice,' the pretrial order controls. Fed. R. Civ. P. 16. Any injustice resulting from exclusion . . . comes from Colvin's own failure properly to present his case during the year and six months prior to entry of the pretrial order. In short, he was too late."); *Mix v. King*, No. 1:13-cv-00823-AWI-MJS (PC), 2017 WL 56652, at *1 (E.D. Cal. Jan. 4, 2017) (citing *Colvin* and noting that "[t]he trial judge may exclude evidence not identified in accordance with the pretrial order when the party seeking to introduce the evidence offers no justification for delay"); *Heath v. Tristar Prods., Inc.*, No. 2:17-CV-2869-GMN-BNW, 2021 WL 3288595, at *2 (D. Nev. Aug. 2, 2021) (same); *WLD Invs., Inc., v. Xecom Corp.*, 35 F. App'x 609, 612 (9th Cir. 2002) ("Notwithstanding the adverse consequences of the pretrial order on Lanza's ability to mount a defense, adverse consequences for defendants – arising from their own extreme lack of diligence – are hardly

the 'manifest injustice' Rule 16(e) was designed to allow district courts to prevent."); *Nunes v. Cty. of Stanislaus*, No. 1:17-cv-00633-DAD-SAB, 2021 WL 4050935, at *2 (E.D. Cal. Aug. 27, 2021) ("Other courts, including those of this District, have held that a movant must also make a showing of diligence.") (citing *WLD Invs*. and *Dompatci Mgmt. Sols. v. Vensure HR, Inc.*, No. 2:17-cv-02399-KJM-AC, 2020 WL 5502359, at *2 (E.D. Cal. Sept. 11, 2020)).

The Court of course is bound by Ninth Circuit precedent. But the Court hopes the Ninth Circuit will clarify the Rule 16(e) standard to recognize that the initial focus should be on the party seeking the amendment and whether that party, in light of all relevant facts, faces manifest injustice. The original four-part test set forth in *First National Bank* accomplishes this objective.[2]

**B.    The Court's Rulings In This Case.**

Plaintiff claims that Defendants produced defective and unreasonably dangerous mesh products for the treatment of stress urinary incontinence and pelvic organ prolapse in women. Plaintiff claims she was injured when Defendants' products were implanted in her, leading to later complications and surgeries.

This case originated in multidistrict litigation based in West Virginia. Apparently to conform with rulings entered in similar cases, the parties agreed before trial that evidence concerning the FDA's regulation of Defendants' pelvic mesh products would not be admitted. Doc. 278 at 12. The parties disagreed, however, on whether trial evidence should include the fact that Defendants withdrew their mesh products from the market in 2012 rather than complete randomized controlled trials required by the FDA in a "522 Order." Plaintiff argued that evidence of Defendants' withdrawal of their products would be necessary to counter Defendants' suggestions that their products were found to be fully safe in clinical trials. Defendants argued that withdrawal of the products was due to a host

---

[2] Arguably, *First National Bank*, as the older decision that has not been changed by the Ninth Circuit acting *en banc*, remains the controlling precedent. *See Silva v. Garland*, 993 F.3d 705, 717 (9th Cir. 2021) ("'[T]he first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals.'") (quoting *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001)).

of considerations unrelated to product safety, and that evidence of the withdrawal would be unfairly prejudicial under Federal Rule of Evidence 403. Docs. 175, 189, 190, 211, 212.

The Court decided that it could not resolve this issue until trial. Among other things, the Court was concerned about how the withdrawal from the market could be introduced without also introducing the FDA's 522 Order, and how that order could be introduced without getting into the FDA's historical regulation of these products. As the Court said in a pretrial order on this subject, "it's a slippery slope." Doc. 278 at 12-13.

During trial, Defendants presented testimony through one of their expert witnesses, Dr. Salil Khandwala, about a series of studies that found Defendants' pelvic mesh products to be safe and effective. In response, Plaintiff's counsel asked at sidebar that they be permitted to ask Dr. Khandwala about the withdrawal of Defendants' products from the market in response to further study requirements by the FDA. Because this was a serious issue, the Court excused the jury from the courtroom, engaged in a detailed discussion with the parties, and, after additional thought, concluded that Plaintiff in fairness should be allowed to elicit testimony that Defendants' products were withdrawn from the market in response to further study requests by the FDA. The Court found that the jury had been given the impression by Dr. Khandwala that all studies performed on Defendants' products showed their safety and effectiveness. Because this arguably was not true – the FDA developed concerns about the safety and effectiveness of the products from some studies completed before 2012 – the Court concluded that Plaintiff would face manifest injustice if precluded from presenting evidence about the FDA's concerns and the subsequent withdrawal. The Court accordingly allowed Plaintiff to amend the final pretrial order under Rule 16(e) to add the 522 Order as an exhibit. Plaintiff's counsel were then permitted to admit the order and cross-examine Dr. Khandwala on this issue. *See* Doc. 325 at 161-90.[3]

---

[3] Plaintiff asked to add not only the 522 Order, but also several related emails that were not listed as exhibits in the final pretrial order. The Court concluded that manifest injustice could be cured by allowing use of the 522 Order and Defendants' letter withdrawing their mesh products from the market (which was already listed as a trial exhibit), and that the additional emails were not needed to prevent the manifest injustice of the jury being led to believe that the only studies conducted on Defendants' products showed safety and effectiveness. The Court also concluded that Defendants would be

- 8 -

Plaintiff later filed a motion to amend the final pretrial order to add a July 2011 publication by the FDA titled "Urogynecologic Surgical Mesh: Update on the Safety and Effectiveness of Transvaginal Placement for Pelvic Organ Prolapse." Doc. 306. Plaintiff's purpose in seeking this amendment was to counter Dr. Khandwala's suggestion on cross-examination that the FDA's 522 Order was prompted by the activities of plaintiff lawyers. *See* Doc. 306 at 3.

The Court concluded that Plaintiff could have anticipated the need for the 2011 publication in light of the disagreement between the parties on the admissibility of Defendants' withdrawal of their products from the market, and therefore could have listed it in the final pretrial order. Doc. 332 at 21. The Court also noted that it would consider instructing the jury to disregard Dr. Khandwala's testimony that plaintiff lawyers helped prompt the 522 Order, and in fact gave such an instruction to the jury after conferring with counsel. Doc. 334 at 10-12, 25. The instruction eliminated any manifest injustice arising from Dr. Khandwala's lawyer-related comment.[4]

Second, Plaintiff sought to amend the final pretrial order to add as an exhibit a 2019 FDA publication titled "FDA takes action to protect women's health, orders manufacturers of surgical mesh intended for transvaginal repair of pelvic organ prolapse to stop selling all devices." Doc. 306 at 4-5. Plaintiff offered this exhibit to counter Defendants' suggestion, through Dr. Khandwala, that the studies completed after 2012 showed mesh products to be safe and effective.

---

prejudiced by admission of the additional emails that had not been listed as part of the trial plan. Admittedly, Plaintiff could have listed the 522 Order in the final pretrial order and probably should have done so in light of the undecided nature of this issue heading into trial. But the Court concluded that Plaintiff's lack of diligence on this issue was not enough to resolve the manifest injustice concerns raised by Dr. Khandwala's testimony, in part because Defendants were well aware of the 522 Order and knew it likely would be the key piece of evidence if the Court found that the door had been opened. On balance, the Court concluded that amendment of the final pretrial order to allow use of the 522 Order – but not the additional proposed exhibits – was needed to prevent manifest injustice.

[4] The Court notes that it proposed to give a more detailed instruction about Dr. Khandwala's testimony, but Plaintiff's counsel opted for a more general instruction, and the Court deferred to their preference. Doc. 334 at 10-12.

The Court concluded that Plaintiff knew from Dr. Khandwala's expert report that he would mention studies completed after 2012, and could have identified the 2019 article in the final pretrial order to counter this testimony.  Doc. 332 at 20.  The Court was also concerned that the late-breaking admission of this article, which was not part of the trial plan established by the final pretrial order, would unduly prejudice Defendants.  The Court further notes that Plaintiff actually cross-examined Dr. Flynn, another defense expert, on a number of post-2012 statements from various medical professional groups raising questions about the safety and efficacy of pelvic mesh products (Doc. 333 at 25-37), and showed the jury – from Dr. Khandwala's own article (Ex. 1088) – that the FDA issued the 2019 order removing pelvic mesh products from the market (Doc. 334 at 57-58).  Amendment of the final pretrial order to add the 2019 article was not needed to prevent manifest injustice.

The Court believes that its rulings on Plaintiff's motions to amend the final pretrial order were consistent with Rule 16(e) and current Ninth Circuit case law.  The Court provides the explanation contained in this order in the hope that it will assist the Ninth Circuit in adjusting the test for resolving Rule 16(e) motions during trial.  Again, the Court believes that the original four-part test set forth in *First National Bank* comports with the language and intent of Rule 16(e) and the general purposes of Rule 16.

Dated this 8th day of April, 2022.

_David G. Campbell_
David G. Campbell
Senior United States District Judge